IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 3, 2015

**BRANNON BLAKE BLACK v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Obion County**
**No. CC-14-CR-1      William B. Acree, Judge**

———————————

**No. W2014-01264-CCA-R3-PC  -  Filed March 23, 2015**

———————————

The Petitioner, Brannon Blake Black, appeals the post-conviction court's denial of relief from his conviction for rape, a Class B felony.  On appeal, he argues that he received ineffective assistance of counsel in connection with his guilty plea.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

David L. Hamblen, Union City, Tennessee, for the Defendant-Appellant, Brannon Blake Black.

Robert E. Cooper, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Thomas A. Thomas, District Attorney General; and Jim Cannon, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On January 18, 2013, the Petitioner entered a best-interest plea of guilty for rape of his 13-year-old half-sister, M.B.[1]  Pursuant to the negotiated plea agreement, the Petitioner received a sentence of eight years' confinement at 100%, followed by community supervision for life.[2]

---

[1] It is the policy of this court to refer to victims of sexual assault by their initials to protect their anonymity.

[2] Pursuant to the plea agreement, the State dismissed the remaining charges against the Petitioner,

At the guilty plea hearing, the State summarized the underlying facts of the Petitioner's conviction as follows:

> [O]n April 30, 2012[,] . . . there were several actual sexual acts. The one that the State is relying upon in this [case] is of the penetration of the 13-year-old victim with the [Petitioner]'s tongue, which constitutes penetration, under the statute, which also constitutes the crime of rape. It would have been the [S]tate's proof in this matter . . . that this was used because of force or coercion, and that subsequent to that, [the victim] did flee the house and seek help from next door and actually reported this almost immediately, and then it was reported to law enforcement.

Following the State's recitation of the facts, the trial court informed the Petitioner that "the purpose of this hearing is for the [c]ourt to determine whether to accept [his] best interest plea to the crime of rape," and to ensure that the Petitioner's plea is entered "knowingly and voluntarily[.]" The court told the Petitioner that he could consult with counsel at any point during the hearing, and the Petitioner indicated that he understood. The trial court and Petitioner then engaged in the following colloquy:

| | |
|---|---|
| COURT: | You have been charged with the crime of rape. Do you understand the nature of this charge? |
| PETITIONER: | Yes, sir. |
| COURT: | This is a Class B felony and you are being sentenced as a violent offender, which means your sentence of 8 years shall mean exactly that, you shall serve 8 years in the Tennessee Department of Correction[]. Do you understand that? |
| PETITIONER: | Yes, sir. |
| . . . | |
| COURT: | You're not eligible for any early release or anything of that nature. Do you understand that? |
| PETITIONER: | Yes, sir. |

---

which included three counts of rape, three counts of rape of a child, two counts of sexual battery, and three counts of incest.

COURT: The range of punishment for this offense is 8 to 12 years and a fine of $25,000. Do you understand that?

PETITIONER: Yes, sir.

COURT: [Petitioner], you also were charged with the crime of rape of a child, and upon recommendation by the State, the charges will be dismissed, but you need to understand this; that had you gone to trial on those charges and were found guilty of the crime of rape of a child, your range of punishment would be 25 years to 40 years. Do you understand that?

PETITIONER: Yes, sir.

COURT: And you would have to serve that entire sentence. Do you understand that?

PETITIONER: Yes, sir.

The court informed the Petitioner that he had the right to plead not guilty and explained to the Petitioner his rights and the rights he would be giving up by entering a best interest plea of guilty. The Petitioner indicated that he understood his rights and what rights he would be waiving. He agreed that counsel had reviewed and advised him about the plea agreement, and he assured the court that he was entering his plea "voluntarily and without any threats . . . or promises." The court then explained to the Petitioner the requirements for community supervision for life:

COURT: [Petitioner], you will be on community supervision for the rest of your life. Do you understand that?

PETITIONER: Yes, sir.

COURT: You will be on probation for the rest of your life. You will be on the sex offender registry. You will have to report to your probation officer for the rest of your life. You're 19 years old and that's going to be a long time. Do you understand that?

PETITIONER: Yes, sir.

COURT: There will be a lot of restrictions placed upon you. For example, you can't be within a minimum of 1,000 feet of a school. Do you understand that?

PETITIONER: Yes, sir.

COURT: If you violate any of these conditions, they will bring you back into court and you will receive additional time in jail. Do you understand that?

PETITIONER: Yes, sir.

COURT: Do you still wish to enter this plea?

PETITIONER: Yes, sir.

After the hearing and upon finding that the Petitioner's guilty plea was knowing and voluntary, the trial court accepted the Petitioner's guilty plea and imposed a sentence of 8 years' confinement. On January 13, 2014, the Petitioner filed a timely pro se petition for post-conviction relief, alleging that he received ineffective assistance of counsel and that his guilty plea was unknowing and involuntary. The Petitioner was subsequently appointed appellate counsel, but no amended petition was filed on his behalf.

At the June 3, 2014 evidentiary hearing, the Petitioner testified that his family hired counsel to represent the Petitioner in the instant case. The Petitioner's case originated in juvenile court but was transferred to criminal court where he was indicted in October 2012. The Petitioner testified that after he was indicted, he met with counsel one time to discuss his case before pleading guilty in January 2013. He claimed that counsel did not explain to him the charges against him or the possible consequences he was facing; however, upon further questioning by appellate counsel, the Petitioner stated, "I think [counsel] told me it was an 8-year sentence" for rape. He testified that counsel told him that rape of a child, a Class A felony, was "serious" and likely carried a 40-year sentence. He claimed that counsel did not tell him about community supervision for life and that he learned about it the day that he pleaded guilty. Upon further questioning by the court, the Petitioner clarified that he met with counsel "probably three times" all together, and counsel "would talk a little bit about [his case] every time[.]" He recalled that his grandmother, Frieda Serguson, would "sometimes" go with him to the meetings with counsel.

-4-

The Petitioner claimed that counsel never provided him a copy of the indictment against him, reviewed the relevant statutes, or discussed the range of punishment for Petitioner's charges. He also claimed that counsel never showed him the warrant for his arrest or the police report detailing the events of the incident. According to the police report, the Petitioner's mother was present in the house where the incident took place; however, the Petitioner testified that counsel never met with his mother or asked her any questions about the incident. The Petitioner testified that counsel did not adequately advise him of the ramifications of his best-interest plea and that he believed he would only serve 30% of the 8-year sentence.

The Petitioner agreed that at his guilty plea hearing, the trial court reviewed the charges and the plea agreement with him prior to him pleading guilty. He testified that he was "overwhelmed" at the hearing and only "somewhat" remembered talking to the judge. He recalled the judge informing him that he would serve 100% of his 8-year sentence and he would be subject to lifetime community supervision but claimed that it did not "register" at the time. He stated that he felt like it was "too late" to stop the proceedings or discuss the plea agreement with counsel.

Counsel testified that he was hired by the Petitioner's grandmother, Frieda Serguson, to represent the Petitioner in the instant case. He estimated that he met with the Petitioner 12 to 15 times to discuss his case. He attended the transfer hearing at juvenile court and listened very closely to M.B.'s testimony. He recalled that M.B. "made an excellent witness" and was "very detailed" about the incident. Counsel stated that his "biggest problem" in the case was talking to the Petitioner because the Petitioner "didn't remember doing anything." Counsel reviewed the police report with the Petitioner and asked him about each allegation, but the Petitioner had "no response." Counsel believed that "to win a case like this," the jury would need to hear some type of defense from the Petitioner and stated that "going to trial with a client who doesn't remember anything . . . is about the wors[t] case scenario you can get in."

Counsel provided the court with documents from his case file, including copies of the relevant statutes, possible sentencing ranges, and the police report, which were introduced into evidence as Exhibit 4. Counsel stated that he reviewed all of these documents with the Petitioner and explained the State's burden of proof if he were to proceed to trial. Counsel also reviewed the State's plea offer with the Petitioner "[q]uite a few times." He "went into detail about the fact that [the plea offer] was 100%" and told the Petitioner about the difficulty of complying with lifetime community supervision. He recalled that on the day of the Petitioner's guilty plea hearing, he took the Petitioner and his family into the hall and reviewed the guilty plea form with the Petitioner to ensure that he understood it. When asked whether he believed that he described the plea agreement and the risks of going to trial in sufficient detail to allow the Petitioner to

make an informed decision, counsel responded, "I don't know how I could have done anything else in detail. I mean, we discussed this thing over and over and over again."

On cross-examination, counsel testified that Ms. Serguson told him that the Petitioner's mother, Dawn Black, would not "help them." He recalled seeing Ms. Black at several hearings with the victim and the victim's father. He believed Ms. Black would be an adversarial witness because she was also the victim's mother and was listed on the State's witness list.

Frieda Serguson, the Petitioner's grandmother, testified that she hired counsel to represent the Petitioner. She and the Petitioner met with counsel three times during his representation, and she was present at the Petitioner's guilty plea hearing. She recalled that prior to the hearing, she and the Petitioner went into the hall with counsel to decide whether he would accept the plea agreement. She stated that counsel "kept saying best-interest plea, best-interest plea. . . [T]hat's the only thing you can do." She claimed that she did not "know that [a best-interest plea] means guilty." She acknowledged that counsel explained that if the Petitioner went to trial he could face a possible punishment of 25 years or more. She understood the plea agreement to be for eight years and believed that the Petitioner would only have to serve "a percentage of that." She stated that counsel "never said [the Petitioner] was go[ing to] have to serve a hundred percent." She also claimed that counsel never told her or the Petitioner about lifetime community supervision, and she first heard about it during the Petitioner's guilty plea hearing.

Dawn Black, the Petitioner's mother, testified that the victim is her daughter and the Petitioner's half-sister. She contested the allegations set out in the police report, which stated that after the Petitioner assaulted the victim, Ms. Black woke up and told the Petitioner to leave the house. She claimed that she never saw the Petitioner in the victim's bedroom and never told him to leave the house. She also stated that, contrary to the police report, the victim never fled to a neighbor's house that evening. Despite being a possible witness, she claimed that counsel never spoke with her about the incident. She stated that she first met counsel on the day of the Petitioner's guilty plea hearing when he met with the family to discuss the plea agreement. Ms. Black stated that counsel told the family "[t]hat if [the Petitioner] took a guilty plea he would only be looking at a partial sentence, that if it went to jury, he would be looking at 40 years, that he had no choice but to plea[d] guilty." She claimed that counsel said the Petitioner's sentence under the plea agreement "would not be long" and he would "do two for one," which she believed meant that the Petitioner would serve only half of the eight-year sentence. She testified that counsel never said the Petitioner would have to serve 100% of his sentence or that he would be subject to lifetime community supervision. She first heard those terms from the trial court during the guilty plea hearing. When asked why she stated in an affidavit created before the evidentiary hearing that counsel told her that the Petitioner would have

to serve 30% of his sentence, she stated, "I'm not sure. [Counsel] said the two for one, a work-release program. I don't know what that means."[3]

Following the hearing, the post-conviction court took the matter under advisement and issued on order on June 3, 2013 denying relief. It is from this order that the Petitioner now timely appeals.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel in connection with his guilty plea. He maintains that counsel failed to investigate his case, interview relevant witnesses, or fully advise him about the ramifications of pleading guilty.[4] The State responds that the post-conviction court properly denied relief because the Petitioner failed to establish that counsel provided ineffective assistance. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State,

---

[3] Frieda Serguson and Dawn Black each supplied an affidavit claiming that counsel never told the Petitioner that he would serve 100% of his sentence or that he would be subject to community supervision for life. Both affidavits averred that counsel told the Petitioner he would have to serve 30% of his sentence. These affidavits were attached to the Petitioner's petition for post-conviction relief.

[4] In his petition for post-conviction relief, the Petitioner also alleged that his guilty plea was unknowing and involuntary; however, in his brief to this court, he conceded that he understood the terms of the plea agreement at the time that of the hearing. He instead focused his argument entirely on counsel's performance and his claim that counsel failed to fully inform him of the terms of the plea agreement before the hearing. Accordingly, we will only address his ineffective assistance of counsel claims.

303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

In the instant case, the Petitioner complains that counsel failed to adequately investigate his case and advise him about the consequences of his guilty plea. In denying relief, the post-conviction court accredited counsel's testimony that he provided the Petitioner with copies of the relevant statutes, sentencing ranges, indictments, and police reports. The court also noted that counsel provided all of these documents at the hearing as part of his case file, and they were made an exhibit. The court acknowledged that the Petitioner and his witnesses offered testimony in conflict with counsel's testimony but found these witnesses to be incredible. The court noted that the substance of their testimony was refuted by their own inconsistencies and by the transcript of the Petitioner's guilty plea hearing. Based upon the record, the court concluded that the Petitioner failed to establish ineffective assistance of counsel.

The record does not preponderate against the post-conviction court's findings. Counsel testified that he met with the Petitioner 12 to 15 times prior to his guilty plea hearing and discussed with him the charges, relevant statutes, and sentencing ranges. Counsel also reviewed with the Petitioner the plea agreement and explained its ramifications, including that he would have to serve 100% of the sentence and be subject to lifetime community supervision. Although the Petitioner and his witnesses offered contrary testimony, the trial court credited the testimony of counsel and found that he "refuted each and every factual claim of ineffective assistance of counsel testified to by the [P]etitioner." This finding was bolstered by the documentation provided by counsel from his case file and the transcript of the guilty plea hearing, at which the Petitioner assured the trial court that he understood the terms of the plea. The Petitioner conceded that whether counsel rendered ineffective assistance of counsel in this case "depends on the credibility of all the witnesses," and offered no further evidence to establish deficient performance by counsel. Credibility determinations are properly resolved by the trial court, and we will not reweigh or reevaluate this evidence on appeal. Vaughn, 202 S.W.3d at 115. Thus, we agree with the post-conviction court that the Petitioner failed to establish ineffective assistance of counsel. The Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE

-9-